**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:20-cv-01570-NRN

MARISELA MERINO, individually and on behalf of all similarly situated persons,

     Plaintiff,

v.

RCG RIFLE, LLC, MICHAEL SPRADLIN and SARA MARTZ,

     Defendants.

---

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT
CERTIFYING CLASS FOR PURPOSE OF SETTLEMENT, DIRECTING NOTICE TO
THE CLASS, AND SCHEDULING FINAL APPROVAL HEARING**

---

Plaintiffs Marisela Merino and Susan Ho and Defendants RCG Rifle, LLC, Michael Spradlin and Sara Martz (collectively the "Parties"), by and through their undersigned counsel of record, hereby request preliminary approval of the Parties' Settlement Agreement attached hereto as Exhibit 1.

**I.      INTRODUCTION**

Defendants operate a chain of three "Rib City" restaurants in Grand Junction, Rifle and Fruita, Colorado.  Plaintiffs, former employees of Defendants, filed this class action against Defendants on June 1, 2020 in this Court.  Plaintiffs alleged that Defendants improperly diverted customer tips from their service staff to its kitchen staff.  Plaintiffs also alleged that Defendants failed to provide their employees all required breaks.  The Parties have had significant bona fide disagreements about legal and factual issues at the core of this dispute, but each party nonetheless acknowledges the risk of an adverse outcome after trial and thus agree to the attached settlement.

Subject to Court approval, the Parties have agreed to settle this action on a class basis for a maximum, all-inclusive payment of $255,000, inclusive of attorneys' fees and litigation costs, payroll taxes, enhancement awards, and administration costs. The settlement is the result of extensive negotiations between the parties during a year of litigation, including motion practice, written discovery, and the exchange of extensive payroll information.

As discussed herein, the settlement meets all the criteria for preliminary approval and preliminary certification as a class action. To effectuate the settlement and distribute funds to settlement class members, the Parties respectfully request that the Court: (1) grant preliminary approval of the proposed settlement agreement, attached as **Exhibit 1**, (the "Settlement Agreement"); (2) certify the proposed class for settlement purposes, (3) sign the proposed Order (**Exhibit 2**), (4) approve and authorize mailing/emailing of the proposed Class Notice of Proposed Class Action Settlement (attached as **Exhibit 1-B**), and (5) set a date for a final approval hearing more than 75 days after the order of preliminary approval. The settlement is non-reversionary, and there is no claims process, i.e., Defendants will pay the entire $255,000.

Because the claims made by Plaintiffs, on their own behalf and on behalf of the putative class, involve the same people with the same state and federal wage claims and worked for the same employer during the relevant time period, the Parties seek what is called a "hybrid" settlement. As will be discussed in more detail below, hybrid settlements have frequently been approved in the United States District Court for the District of Colorado. *See Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117 (D. Colo. 2016); *Loyoza v. AllPhase Landscape Const. Inc.*, No. 12-cv-1048-JLK (D. Colo. Mar. 31,

2015); *Bass v. PJCOMN Acquisition Corp.*, No. 09-cv-01614-REB-MEH (D. Colo. June 1, 2011).

Finally, the Parties wish to highlight two aspects of the settlement that the Court should bear in mind when considering whether to grant preliminary approval:

1. The settlement would resolve all claims in this case, ending this litigation.

2. The monetary value of the settlement for each putative class member, which is not affected by attorneys' fees, costs, or service awards, would provide the proposed class with all of its alleged diverted tips.

3. This is a "cash-paid" settlement, as opposed to a "claims-made" settlement. Class members need not affirmatively act in order to receive a disbursement of a settlement check representing their unpaid tips and an amount for a statutory penalty—damages Plaintiffs and alleged class members may be owed under applicable state and federal law.

## II.    STATEMENT OF FACTS

### A.    Procedural And Litigation History

Plaintiffs worked as servers for Defendants.  On June 1, 2020, they filed the instant action alleging that Defendants improperly diverted employee tips in violation of the Fair Labor Standards Act ("FLSA") and Colorado state law.   Plaintiffs also alleged that Defendants failed to provide all of the breaks required by Colorado state law.   The Parties thoroughly investigated their claims and defenses, engaged in written discovery and reviewed extensive payroll information.

### B.    Background Of Settlement Negotiations

The Parties conducted an extensive investigation of facts during the course of litigation, which included the formal and informal exchange of information.  Counsel for the Parties also analyzed the likelihood of class certification in the event the Parties did not reach a settlement, as well as facts associated with Plaintiffs' claims.  The Parties further reviewed the record and interviewed witnesses.  Numerous tele-conferences were

held and emails exchanged between counsel for the Parties in order to attempt to resolve the claims.

Defendants continue to deny any liability or wrongdoing of any kind associated with the claims alleged by Plaintiffs, and further deny that, for any purpose other than settling this matter, this action is appropriate for class treatment.  Defendants contend that it is impossible to establish the commonality and typicality required by Rule 23. Defendants further contend that Plaintiffs cannot demonstrate that common issues of law or fact will predominate over individualized inquiries or that a class action is the superior method of resolving the claims of Plaintiffs and the putative class members.  Defendants contend that individualized inquiries would outweigh any commonality of factual or legal issues and also claim that Plaintiffs could not establish, on a class-wide basis, that all employees were entitled to additional backpay.

Plaintiffs, on the other hand, assert that Defendants failed to comply with federal and Colorado law.  Class Counsel understands Defendants' position and defenses, but believes Plaintiffs, individually and on behalf of the class, could ultimately succeed at trial on the basis of common proof.  Both Parties recognize the uncertainty of the outcome, and appreciate the expense and time associated with further litigation.

Accordingly, in the interest of resolution, representatives of the Parties participated in lengthy settlement negotiations and ultimately reached the Settlement Agreement after taking into account the disputed factual and legal issues, the risks attendant to further prosecution, Defendants' defenses, and the benefits to be received by class members. Counsel concluded that settlement on the terms set forth herein is in the best interest of Plaintiffs and the class and is fair and reasonable.

III.    **THE PARTIES' SETTLEMENT**

A.    **The Settlement Terms**

The Settlement Agreement defines the "Settlement Class" and "Settlement Class Member(s)" as:

> ALL TIP CREDIT SERVERS WORKING AT DEFENDANTS' GRAND JUNCTION, FRUITA AND RIFLE LOCATIONS AT ANY TIME BETWEEN APRIL 1, 2018 AND APRIL 1, 2020 WHO PARTICIPATED IN DEFENDANTS' FORMER TIP POOL THAT INCLUDED KITCHEN STAFF.

Ex. 1 at ¶ II.A.  The Class Members are identified on Exhibit 1-A.

The Settlement provides for a $255,000 settlement amount (the "Gross Settlement Amount"), which is the maximum amount Defendants are required to pay under the Settlement Agreement.  Ex. 1 at ¶ IV.E.1.  The Settlement is non-reversionary.  All required payments will be made from this amount, including all payments to Settlement Class Members, attorney's fees and litigation expenses, all payroll and withholding taxes, including all employer payroll taxes, settlement administration costs, and any enhancement award.  *Id.*

Plaintiff's counsel has agreed to seek no more than $87,805.68 (or approximately 34.5% of the total settlement amount) for attorney's fees, which amount includes all litigation costs.  Ex. 1 at ¶ IV.E.2.  The Settlement Agreement provides for Plaintiffs to receive enhancement payments of $7,619.35 for Ms. Merino and $4,119.16 for Ms. Ho.  Ex. 1 at ¶ IV.E.3.  To the extent the Court approves lesser amounts for attorney's fees or litigation costs, the unapproved amounts will be allocated to Settlement Class Members on a pro rata basis.  Ex. 1 at ¶ IV.E.6.

The Settlement Administrator will mail a notice of preliminary approval to each

Settlement Class Member within 15 business days after the Court enters an order preliminarily approving the Settlement, as well as email such notice to Settlement Class Members with email addresses.  Ex. 1 at ¶ IV.C.2.  There will be a single re-mailing of any undeliverable notices and the Settlement Administrator will work diligently to ensure that any such notices are re-mailed to an updated address.  Ex. 1 at ¶ IV.C.6.

Settlement Class Members will have 45 days after mailing of the notice to opt out of the Settlement or file objections, and are also provided an opportunity to appear at the final approval hearing to be set by the Court.  Ex. 1 at ¶¶ IV.C.5.

B.    **The Settlement Payments**

The Gross Settlement Amount, less all amounts required to be paid under paragraphs IV.E.2.–.E.5., will be allocated among the Settlement Class Members that do not opt-out based on the amount of tips diverted from each Class Member to kitchen staff. Each Settlement Class Member's anticipated payment prior to applicable taxes is set forth on Exhibit 1-A.

Members of the Settlement Class who opt out of the Settlement Agreement will be ineligible to receive any payment.  Ex. 1 at ¶ IV.E.7.c.  The settlement payments will be allocated 50 percent to wages and 50 percent to penalties/interest.  Ex. 1 at ¶ IV.E.7.d.  Settlement checks that cannot be delivered or are not cashed after 180 days of mailing will be redistributed among those Class Members who previously deposited or cashed their settlement checks.   Ex. 1 at ¶ IV.G.3.

IV.    **ARGUMENT**

A.    **Hybrid Settlements**

In filing this lawsuit, Plaintiffs alleged both state and federal causes of action for

alleged failure to pay lawful wages. These claims involve the same workers, the same places of employment, and the same underlying facts. The mechanisms for properly certifying and administering the state and federal wage law claims, however, are not the same. Class actions based on state wage laws are governed by Fed. R. Civ. P. 23.  Under that paradigm, class members must be sent notice that provides that any class member "who does not wish to be bound by the judgment must timely exclude themselves by affirmatively opting-out of the class."  *Pliego*, 313 F.R.D at 123; Fed. R. Civ. P. 23(c)(2)(B). Conversely, the FLSA and federal courts interpreting the FLSA have concluded that "employees must affirmatively opt-in to the case in order to be bound by the judgement in FLSA collective actions."  *Pliego*, 313 F.R.D at 124; 29 U.S.C. § 216(b).

However, because normal *res judicata* principles apply in hybrid FLSA/Rule 23 collective/class actions, Rule 23 class members who do not opt-out and also specifically do not opt-in to the release of FLSA claims, will be bound to the settlement, unless such claimants show grounds for collateral attack.  *Pilego*, 313 F.R.D. at 132 (citation omitted); *see also Lipnicki v. Meritage Homes Corp.*, No. 3:10-CV-605, 2014 WL 923524, at *15 (S.D. Tex. Feb. 13, 2014) (*res judicata* bars a subsequent FLSA suit when predicated on the same facts as previously settled Rule 23 action).  The FLSA claims here are notably predicated on the exact same facts as the Colorado state law claims and class members' payments under the settlement agreement are not differentiated based on the claims asserted, given that the class members are receiving payment for all unpaid wages in addition to a statutory penalty.

"[T]he most recent cases arising in this District tend toward approving [hybrid settlements]."  *Pliego*, 313 F.R.D. at 125.  With regard to hybrid settlements, "[t]he review

and approval of a class action settlement is undertaken in three steps: (1) preliminary approval of the proposed settlement after submission of a written motion for preliminary approval, the proposed class settlement, and the proposed class notice; (2) dissemination of mailed and/or published notice of the settlement to all affected settlement class members; and (3) a formal fairness hearing or final settlement approval hearing, at which time class members may be heard regarding the settlement, and at which time evidence and argument concerning the fairness, adequacy and reasonableness of the settlement may be presented." *Id.*

### B.    The Court Should Preliminarily Approve The Settlement

Fed. R. Civ. P. 23(e) provides a class action can be settled only with court approval.  Such approval typically involves a two-step process consisting of (1) preliminary approval of the settlement and notice to all class members, and (2) a final fairness hearing.  *See In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013).

Preliminary approval of a class action settlement is thus a provisional step.  At the preliminary approval stage, the Court determines only whether there is "any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing."  *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006).  A settlement should be preliminarily approved if it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *In re Motor Fuel Temp. Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) (citation omitted).  The standards for preliminary approval are less stringent than at the final approval stage.  *In re Crocs*, 2013 WL 4547404, at *3

("Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is … 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.") (quoting *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011)).  Moreover, in evaluating a proposed settlement, "courts are not to decide the merits of the case or resolve unsettled legal questions," because "the essence of settlement is compromise, and settlements are generally favored."  *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284-85 (D. Colo. 1997) ("[The Court's] role at this stage of the proceeding is not to evaluate the merits of the litigation, since this would contravene the parties' decision to 'waive their right to litigate the issues involved in the case and thus save themselves the time, and the inevitable risk of litigation.'") (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971)).  *See also Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014) (presumption in favor of voluntary settlement "especially strong" in class actions) (citation omitted).

In determining whether to approve a proposed class settlement, courts must consider whether the settlement is fair, reasonable, and adequate.  *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1266 (10th Cir. 2004).  Courts in the Tenth Circuit examine four factors in determining whether this standard is satisfied:

> (1) whether the proposed settlement was fairly and honestly negotiated;
>
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
>
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>
> (4) the judgment of the parties that the settlement is fair and

reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).  Although the Court will scrutinize these factors more closely at the final approval hearing, they provide a useful guide at the preliminary approval stage.  *See Tuten*, 41 F. Supp. 3d at 1007-8.   In consideration of these factors, preliminary approval of the Settlement Agreement is warranted.

### 1.    The Proposed Settlement Was Fairly And Honestly Negotiated

The fairness of the settlement negotiation should be examined "in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves." *Ashley v. Reg'l Transp. Dist.,* No. 05-cv-01567-WYD-BNB, 2008 WL 384579, at *5 (D. Colo. Feb. 11, 2008) (citation omitted).  The primary concern is "the protection of class members whose rights may not have been given adequate consideration during" settlement negotiations. *Wilkerson*, 171 F.R.D. at 283 (quoting *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 546 (D. Colo. 1989)).

Here, the Parties are represented by experienced counsel specializing in the type of wage and hour claims alleged in the action.  The Parties engaged in formal discovery regarding the merits of the claims and Defendants' defenses, including written discovery and the informal exchange of voluminous pay records for both the Plaintiffs and the putative Settlement Class Members.

Through this formal and informal discovery, each party possessed ample information to fully evaluate the strengths and weaknesses of their claims and defenses, as well as the fairness of the Settlement Agreement.  The Parties' counsel rigorously negotiated the settlement terms, such that there can be no doubt that the settlement was

honestly and fairly negotiated, and not the product of collusion.  *See Lucas*, 234 F.R.D. at 693 (settlement presumed to be fair and reasonable where it is the result of "arm's length negotiations between experienced counsel after significant discovery").

2.    **Serious Questions Of Law And Fact Exist, Placing The Ultimate Outcome Of This Action In Doubt**

To continue through trial would expose the parties to significant risks.  *See Wilkerson*, 171 F.R.D. at 285-86 ("Indeed, the one constant about litigation, based on my experiences as a trial attorney and now as a judge, is that the ultimate jury result is uncertain, unknown and unpredictable.")  Plaintiffs believe the claims are strong, but recognize that success is not guaranteed.  With respect to the merits of Plaintiffs' claims, Plaintiffs believe they will prevail in demonstrating that Defendants' servers are owed additional compensation under the FLSA and Colorado law.  Defendants, however, contend that they properly distributed tips and provided breaks.  Moreover, Defendants are confident that Plaintiffs would ultimately not prevail in certifying the class. Nonetheless, while both Parties believe their positions are strong, both recognize that they may not ultimately prevail, and that the proposed settlement alleviates the uncertainty for both sides.

Even aside from the risks associated with determining liability, significant risks exist as to the amount of possible damages.  For example, the Parties dispute whether the three-year limitations period applies, or whether the two-year period for non-willful violations would be applicable in this matter.  *See Tuten*, 41 F. Supp. 3d at 1007 (approving final settlement where questions of law and fact existed with respect to applicable statute of limitations).  Moreover, the availability of state law penalties and/or liquidated damages is a disputed issue.   Because there are several important questions

of law and fact regarding liability and damages that remain unresolved, the second factor weighs in favor of approval of the Settlement. Moreover, as described above, the Parties have met their obligation to prove that a bona fide dispute exists between adversarial parties. *Pliego*, 313 F.R.D. at 127-28 (citing *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) ("In the context of settlement of an FLSA [action], a district court must 'scrutiniz[e] the settlement for fairness' and decide whether the proposed settlement is a 'fair and reasonable resolution (sic) of a bona fide dispute over FLSA provisions.").

### 3.    The Value Of Immediate Recovery Outweighs The Possibility Of Any Future Relief

The "value of an immediate recovery" means the "monetary worth of the settlement." *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993), abrogated on other grounds by *Devlin v. Scardelletti*, 536 U.S. 1 (2002). This value should be measured against "the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Id.* at 1015.

The issues here are complex and will be vigorously contested, resulting in significant time and expense if the litigation continues. Barring a settlement, the Parties will engage in additional discovery, including numerous depositions and class certification proceedings. The trial would include testimony by representatives of Defendants, Class Members, and expert witnesses. Thereafter, any final judgment could be appealed, thereby extending the duration of the litigation.

Given these risks, further litigation could result in no recovery for Class Members. Based on these circumstances, it is prudent for the parties to "take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co. (Indiana)*,

64 F.R.D. 597, 624 (D. Colo. 1974) (citation omitted).   For these reasons, the value of an immediate settlement far outweighs the uncertainty of any future relief, and the Settlement Agreement should be preliminarily approved.   *See Pliego*, 313 F.R.D. at 130-31 ("The proposed settlement reflects a reasonable compromise of the risk Plaintiff and the Class faced had they proceeded to trial . . . .   Moreover, given the inherent risks associated with further litigation, the Class Members may recover less should the case proceed through trial.   Thus, the proposed settlement at this stage far outweighs any potential benefits, if any at all, of further litigation.").

### 4.    Counsel Believe The Settlement Is Fair And Reasonable

Counsel for both sides fully support the Settlement Agreement, and "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695 (finding that this factor favored preliminary approval where "the parties' counsel - among whom are attorneys with substantial experience in complex class action litigation and disability class actions - unanimously support this settlement") (citation omitted); *see also Rhodes v. Olson Associates, P.C.*, 308 F.R.D. 664, 667 (D. Colo. 2015) ("Class Counsel are experienced in consumer class actions, and weight is given to their favorable judgment as to the merits, fairness, and reasonableness of the settlement."); *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 548 (D. Colo. 1989) ("Courts have consistently refused to substitute their business judgment for that of counsel and the parties."); *Wilkerson*, 171 F.R.D. at 288-89.

When evaluated in light of the four factors identified by the Tenth Circuit, the proposed settlement is fair, reasonable, and adequate and should be approved.

### 5.    The requirements of Rule 23(e)(2) are satisfied.

In addition to the factors established by the Tenth Circuit, the proposed settlement

satisfies the requirements of Rule 23(e)(2).  As addressed above, Plaintiffs and Class Counsel have engaged in over one-year of litigation including voluminous written discovery.  There are no conflicts or interests of Plaintiffs or Class Counsel that are antagonistic to the Settlement Class, and Class Counsel is experienced in these type of wage and hour matters.  The settlement that was reached was negotiated intensely by both Parties.  The settlement that was achieved provides adequate relief for the Settlement Class, as demonstrated above, given the uncertainty of liability, particularly on a class-wide basis; the substantial costs and delay that would result from trial and appeal; the expedient claims-process established by the settlement; and the reasonable fee award given the substantial time investment of Class Counsel.  Lastly, the proposed settlement treats all members of the Settlement Class the same, given the formula utilized to determine each member's individual payment.  The Court should preliminarily approve the settlement.

### C.    The Settlement Class Meets the Requirements of Rule 23(a) For Settlement Purposes. [1]

#### 1.    Numerosity

The numerosity requirement of Rule 23(a)(1) is established if the class is so numerous that joinder of all members is impracticable.  In the instant case, the Settlement Class consists of 83 individuals, which satisfies the numerosity requirement of Rule 23(a)(1).  *See, e.g. Maez v. Springs Automotive Group, LLC*, 268 F.R.D. 391, 395 (D.Colo.,2010) (391 putative class members satisfied numerosity requirement).

---

[1]    Defendants reserve the right to contest whether a class action is proper in this case, if necessary, but agree that Plaintiffs' contentions are sufficient to demonstrate a proper settlement class under Rule 23.

### 2.    Commonality

"A finding of commonality requires only a single question of law or fact common to the entire class." *DG v. Devaughn*, 594 F.3d 1188, 1194-1195 (10th Cir. 2010).  "[E]very member of the class need not be in a situation identical to that of the named plaintiff." *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982).  Here, Plaintiff contends the primary questions of law and fact central to the claims against Defendant include:

      a.    Whether tips were improperly diverted to Defendants' kitchen staff;

      b.    Whether Defendants provided required breaks to employees;

      c.    Whether Defendant willfully violated the Colorado Wage Claim Act; and

      d.    Whether Plaintiffs and the Class Members have sustained damages and, if so, the proper measure of damages.

Thus, for settlement purposes, the proposed class members share sufficient commonality to satisfy Fed. R. Civ. P. 23(a)(2).

### 3.    Typicality

To satisfy the typicality requirement Fed. R. Civ. P. 23(a)(3), Plaintiff must show that his claims "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiff such that the interests of the class will be fairly and adequately protected in their absence. *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 157 n.13 (1982).  "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988).

Plaintiffs allege that they and the other putative class members were paid improperly since their tips were diverted to kitchen staff and they were not provided required breaks.  As a result, Plaintiffs claim that they and the other putative class

members are owed additional compensation.  Plaintiffs contend that the legal standards and requirements for proving the subject wage and hour claims under Colorado law are the same for Plaintiffs' individual claims and those of all of the putative class members.  Thus, for settlement purposes, Plaintiffs' claims are sufficiently typical of the putative class to satisfy Fed. R. Civ. P. 23(a)(3).

### 4.  Adequacy

The last requirement of Rule 23(a) is that the representative party will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(4).  The Tenth Circuit has identified two questions relevant to the adequacy of representation inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002).  "Adequate representation depends on, among other factors, an absence of antagonism between the representatives and absentees, and a sharing of interest between representatives and absentees." *In re Molycorp, Inc. Securities Litigation*, 2017 WL 4333997, at *6–7 (D.Colo., 2017) (citations omitted).

Plaintiffs assert that neither they nor their counsel have any interests antagonistic to those of the putative class members.  Plaintiffs contend they have communicated regularly with Class Counsel, and that Plaintiffs, through their counsel, have prosecuted this action vigorously on behalf of themselves and the putative class.  Plaintiffs contend their counsel has considerable experience as lead counsel in class action wage and hour litigation.  Thus, for settlement purposes, Plaintiffs have established that they and Class Counsel will fairly and adequately protect the interests of the putative class to satisfy Fed. R. Civ. P. 23(a)(4).

**B.** **The Settlement Class Meets the Requirements of Rule 23(b)(3) For Settlement Purposes.**[2]

Plaintiffs assert that certification is proper under Rule 23(b)(3) for settlement purposes.  Rule 23(b)(3) permits class certification when (1) common questions of law and fact predominate over any individual claims and (2) a class action is the superior method to fairly and efficiently adjudicate the matter.   Under the Rule 23(b)(3) predominance analysis, the Court must determine whether the proposed class is "sufficiently cohesive to warrant adjudication by representation."  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

### 1.    Predominance

The predominance requirement is satisfied if a plaintiff establishes that a common nucleus of facts and potential legal remedies dominates the litigation. *Id.*  As explained above, Plaintiffs assert that the common nucleus of facts in the present case derives from the alleged practices that (1) improperly diverted tips to kitchen staff; and (2) did not provide required breaks to Class Members.  Based on these alleged violations of law, Plaintiffs allege that the Settlement Class Members would be entitled to the same legal remedies. Accordingly, preliminary class certification for settlement purposes to effectuate the Settlement Agreement is proper.  Additionally, Plaintiffs contend that class certification in this case serves the judicial economy function of Rule 23 class actions.

### 2.    Superiority

Plaintiffs allege that a proposed class action settlement is the superior method of resolving the dispute in comparison to available alternatives.  A class action is the superior method for managing litigation if no realistic alternative exists.  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-1235 (9th Cir. 1996).  Plaintiffs assert that the alternative method of resolution is dozens of individual claims, but individual cases would

---

[2]    Defendant reserves the right to contest whether a class action is proper in this case, if necessary, but agrees that Plaintiff's contentions are sufficient to demonstrate a proper settlement class under Rule 23.

be uneconomical for potential plaintiffs because the cost of litigation dwarfs their potential recovery, and for Defendants and the Court because it would cause an extensive duplication of efforts and resources. Because it is likely that each individual Settlement Class Member could only pursue relatively small claims, such individuals have no particular interest in individually controlling the prosecution of separate actions. Additionally, in the instant action, the Settlement Class Members have the option to opt-out of the proposed settlement, thus allowing individuals the opportunity to control the litigation.

There is no other pending litigation involving the Settlement Class Members, and plaintiff asserts that concentrating the litigation of the claims in a particular forum would be the most efficient manner or adjudicating all of the claims of the Settlement Class. For purposes of preliminary approval of the Settlement Agreement, there is no reason why concentrating the litigation in this Court would be undesirable.

Lastly, under Rule 23(b)(3)(D), the Court may consider likely difficulties in managing a class action. In the context of a settlement, however, considerations regarding management of the class action are irrelevant, because the proposal to the court is to avoid trial through a settlement agreement. *See Amchem*, 521 U.S. at 620 (1997). In light of these considerations, preliminary certification of the Settlement Class for settlement purposes is proper under the requirements of Rule 23(b)(3).

### D. <u>Attorney's Fees and Costs</u>

In class action cases, counsel who obtain a common fund settlement are entitled to recover reasonable attorneys' fees paid from the fund. *See Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994). Courts generally award attorneys' fees in common fund cases "based on a percentage of the common fund obtained for the benefit the class," thereby "proportionately spreading payment of attorney fees among the class members." *Lucken*

*Family Ltd. P'ship, LLLP v. Ultra Res*., Inc., 09–cv–01543–REB–KMT, 2010 WL 5387559, at *2-3 (D. Colo. Dec. 22, 2010).  "The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel was retained on a contingent fee basis, as in this case." *Id.* (quotations omitted); *see also Anderson v. Merit Energy Co.*, Nos. 07–cv–00916–LTB–BNB, 07–cv–01025–REB–MJW, 2009 WL 3378526, at *2 (D. Colo. Oct. 20, 2009) ("Under Tenth Circuit law, attorneys' fees in common fund cases are generally awarded based on a reasonable percentage of the fund created.").  Here, Class Counsel seeks a fee paid out of the common fund created for the benefit of the class.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980).

As a "cross-check" of the reasonableness of a fee award calculated as a percentage of the fund, the Tenth Circuit has adopted a test, which analyzes the following twelve factors (the "*Johnson*" factors): (i) the time and labor required; (ii) the novelty and difficulty of the question presented in the case; (iii) the skill requisite to perform the legal service properly; (iv) the preclusion of other employment because of acceptance of the case; (v) the customary fee; (vi) whether the fee is fixed or contingent; (vii) any time limitations the client or circumstances imposed; (viii) the amount involved and the results obtained; (ix) the attorneys' experience, reputation, and ability; (x) the undesirability of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases.  *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714-717-19 (5th Cir. 1974); *Gottlieb*, 43 F.3d at 483 & n. 4.  "[R]arely are all of the *Johnson* factors applicable."  *Uselton v. Commercial Lovelace Motor Freight, Inc.,* 9 F.3d 849, 854 (10th

Cir. 1993).   Here, Class Counsel seeks attorneys' fees of $87,805.68, inclusive of litigation costs, which is 34.5% of the settlement fund.

"Courts have consistently held that the most important factor within this analysis is what results were obtained for the class."  *Lane v. Page*, 862 F. Supp. 2d 1182, 1254 (D.N.M. 2012).  Here, under Defendants' theory, none of the class members would be owed anything.  Instead, Class Counsel has secured a class settlement that provides for a reasonable estimate of damages for all class members given the facts of the case and the relative merits of Plaintiffs' claims and Defendants' possible defenses.

Moreover, applying the *Johnson* factors demonstrates that the fees and expenses sought by Class Counsel are reasonable.  First, the time and labor involved support the fees.  Class Counsel prosecuted the litigation without payment and advanced all costs. Class Counsel also engaged in significant discovery and motions practice.[3]

Second, the novelty and difficulty of the questions presented support the fees sought by Class Counsel.  This case involved complex employment law issues as well as complicated issues relating to class certification.  In fact, Class Counsel believes that very few, if any, Colorado practitioners would even have recognized the fundamental legal

---

[3] Through completion of this settlement, Class Counsel will have invested approximately 75 hours into this litigation. *Declaration of Brian D. Gonzales* at ¶12, attached hereto as Exhibit 3.  Given his experience and specialization in this complex area of practice, Class Counsel believes $600/hour to be a reasonable rate.  *Id.* at ¶ 13; *Magouirk v. Spanish Trails, Inc.*, No. 18-cv-01669-PAB-KLM, 2020 WL 2512831, at *2 (D. Colo. May 15, 2020) (citing *Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *8 (D. Colo. Apr. 22, 2015)) (recognizing reasonable hourly rates between $150 and $675 for attorneys and staff members involved in litigation).  Given Class Counsel's lodestar of $45,000, the $91,800 contingent, common-fund percentage fee award is well within the range of reasonableness, particularly since it includes costs.  *Magouirk*, 2020 WL 2512831, at *2 (citing *Mishkin v. Zynex*, Inc., No. 09-cv-00780-REB-KLM, 2012 WL 4069295, at *2 (D. Colo. Sept. 14, 2012)) (recognizing that lodestar multipliers between 2.5 and 4.6 are reasonable).

issues, let alone been willing to litigate the issue on a contingency basis.

Because factors three and nine are closely related, the Court analyzes together the skill requisite to perform the legal services properly, and the experience and skill of Class Counsel. Here, Class Counsel has significant experience prosecuting complex wage and hour class actions and collective actions. (Gonzales Decl. ¶¶1-11). Class Counsel represents workers across the country in wage and hour matters and has successfully prosecuted class and collective actions numerous times. *Id.* Accordingly, Class Counsel's skill and reputation weigh in favor of the requested attorneys' fee and expense award.

Further, the attorneys' fees in this case were contingent. This factor weighs in favor of the requested attorneys' fee award, because "[s]uch a large investment of money [and time] place[s] incredible burdens upon ... law practices and should be appropriately considered." *Feerer v. Amoco Prod. Co.,* 1998 U.S. Dist. LEXIS 22248, at *33; *see also Been v. O.K. Indus., Inc.*, No. CIV–02–285–RAW, 2011 WL 4478766, at *9 (E.D. Okla. Aug. 16, 2011) ("Courts agree that a larger fee is appropriate in contingent matters where payment depends on the attorney's success."). Class Counsel assumed the risk that the litigation would yield no recovery and received no compensation for the time and expenses incurred during the course of the litigation.

The requested fee award of 36% (including costs) is appropriate in complex cases taken on a contingent fee basis. *See, e.g., Cook v. Rockwell Int'l Corp.*, No. No. 90–CV– 00181–JLK, 2017 WL 5076498 (D. Colo. Apr. 28, 2017) (awarding 40% fee to class counsel); *Whittington v. Taco Bell of Am., Inc.,* No. 10-CV-01884-KMT-MEH, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) ("Together the fees and costs amount to

approximately 39% of the fund as a whole. This is within the normal range for a contingent fee award."); *Legros v. Mud Control Equip., Co.*, No. 15-1082, 2017 WL 925730, at *3 (W.D. La. Mar. 6, 2017); *Hebert v. Baker Hughes, Inc.,* No. 6:15-2566, 2016 WL 7029336, at *4 (W.D. La. Nov. 9, 2016).

Additionally, the time and effort to litigate this case as well as the complexity of the issues would make it undesirable to many attorneys. *See Been*, 2011 WL 4478766, at *10 (finding that the time and effort expended in an expensive litigation made a class action undesirable for class counsel). Under Defendants' theory, Plaintiffs and Class Members are not owed any additional wages. Furthermore, the legal theories involved required substantial expertise in the wage and hour field. Many attorneys would not have understood the nuanced arguments asserted, nor would they have been able to discern whether Plaintiffs even had a viable claim. Additionally, other lawyers may not have had the expertise to ascertain and evaluate the possible damages awards available to the Class Members in this case. Thus, the work of Class Counsel provided a significant benefit to the Class Members. Had this case not settled, Class Counsel would have vigorously litigated the case without any promise of success and compensation. Yet, at every step of the litigation, Defendants could have succeeded. Applying the relevant *Johnson* factors, Class Counsel asks that the Court approve the requested award of attorneys' fees.

### E.    The Court Should Approve The Proposed Notice And Claim Form

Pursuant to Rule 23(e), the Court must direct reasonable notice to all class members. *See Lucas*, 234 F.R.D. at 696. Courts have broad discretion to approve the specific form and content of notice so long as the notice meets the requirements of

constitutional due process.  *See In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110-11 (10th Cir. 2001).  These requirements are met if the notice is reasonably calculated to apprise interested parties of the pendency of the proposed settlement and afford them an opportunity to present objections.  *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

A Rule 23(e) settlement notice must inform class members (1) of the nature of the pending litigation, (2) of the settlement's general terms, (3) that complete information is available from the court files, and (4) that any class member may appear and be heard at the final approval hearing.  4 Newberg on Class Actions § 11:53 (4th ed. 2002); *see also Lucken Family L.P., LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 2650037, at *3-4 (D. Colo. June 30, 2010) (notice sufficient where it informed class members of the nature of the lawsuit, their right to opt out and object, the settlement terms, and the binding effect of the settlement on settlement class members who do not opt out).

The proposed Notice, Exhibit 1-B, satisfies all these elements.  First, it explains the nature of the action, in particular that it pertains to all individuals who worked for Defendants and whose tips were improperly diverted.

Second, the Notice apprises Settlement Class Members of the pendency of the settlement and informs them of all material settlement terms.  The Notice explains that Class Members who "do nothing" will remain in the Settlement Class, receive a settlement payment, and be bound by the settlement and all orders and judgments.  The Notice describes how to opt out of the settlement, informs Class Members that they will receive

a share of the Settlement Amount based on the amount of tips they contributed to kitchen staff.

Third, the Notice advises Class Members that they can examine the Settlement Agreement and all other pleadings from this lawsuit through the Court.  Finally, Class Members are provided full notice of their right to file objections, attend the fairness hearing, or hire their own attorney at their expense.

The proposed manner of notice and timetable for further proceedings are also reasonable.  Notice will be sent to Class Members by first-class mail to their last known address with 15 days after the Settlement is preliminarily approved, and will also be sent via email to those Settlement Class Members with last known email addresses.  Notices returned as undeliverable will be re-mailed using the most recent contact information from available databases.

Class Members will have a reasonable amount of time, 45 days from the date the notice is mailed, to object to the Settlement or mail an opt-out request.  Courts have routinely found a 45-day period to be reasonable and have even approved shorter periods.  *See DeJulius*, 429 F.3d at 945-47 (32 days reasonable); *Bryant v. Act Fast Delivery of Colo., Inc.*, No. 14-cv-00870-MSK-NYW, 2015 WL 392663, at *5 (D. Colo. June 25, 2015) (45 days reasonable).

The Parties will file a Joint Motion for Final Approval of the Settlement within 7 days after the end of the objections period, so as to permit compliance with the Class Action Fairness Act, 28 U.S.C. § 1715(d).  The parties request that thereafter the Court hold a fairness hearing for the purpose of determining whether to grant final approval of the Settlement.

## V.    PROPOSED SCHEDULE

The Parties propose the following schedule for finalizing the settlement, distributing notices, allowing objections from absent Class Members, and distributing funds considered herein.

| Notice and Opt-Out Forms Distributed to the Class Members | Within **15 days** after the **Court's Preliminary Approval** |
|---|---|
| Opt-Out / Objection Period | **45 days** following the **initial mailing of Notices** |
| Parties' Counsel to Exchange All Written Objections, Opt-Outs, and number of notices returned as undeliverable. | Within **7 days** after the conclusion of the **Opt-Out / Objection Period** |
| Defendants' Right to Withdraw (if conditions met under the Settlement Agreement) | Within **20 days** after the conclusion of the **Opt-Out / Objection Period** |
| Final Approval and Fairness Hearing | |
| Effective Date | Date of the Court's Order Granting Final Approval and the expiration of the time for filing an appeal |
| Distribution of Funds<br>       Class Counsel's Fees/Costs<br>       Plaintiffs' Incentive Award<br>       Class Settlement Checks | <br>Within **10 days** after the **Effective Date**<br>Within **10 days** after the **Effective Date**<br>Within **30 days** after the **Effective Date** |
| Distribution of Residual Funds | Within **21 days** after the **expiration of the 180 day period to deposit** |
| Certification to the Court that All Funds Contemplated by the Settlement Agreement Have Been Properly Distributed | Within **30 days** after the distribution of residual funds. |

## VI.    CONCLUSION

The proposed Settlement is fair, adequate, and reasonable.  It will result in considerable payments to Class Members; it is non-collusive; and it was achieved as the

result of informed, extensive, and arm's length negotiations conducted by counsel for the respective Parties who are experienced in wage and hour class action litigation.  For the foregoing reasons, the Parties respectfully request that the Court grant preliminary approval of the proposed Settlement, certify the proposed class for settlement purposes, sign the proposed Order (Exhibit 2), approve and authorize mailing/emailing of the proposed Class Notice of Proposed Class Action Settlement, and set a date for a final approval hearing more than 75 days after the order of preliminary approval.

Dated this 23rd day of July 2021.


*s/ Brian D. Gonzales*
Brian D. Gonzales
THE LAW OFFICES OF
BRIAN D. GONZALES, PLLC
2580 East Harmony Road, Suite 201
Fort Collins, CO 80528
Telephone:  (970) 214-0562
bgonzales@coloradowagelaw.com

*s/ Joshua D. Kohler*
Joshua D. Kohler
LEWIS BRISBOIS BISGAARD & SMITH, LLP
1700 Lincoln Street, Suite 4000
Denver, CO 80203
Telephone: (303) 562-9771
Joshua.Kohler@lewisbrisbois.com