**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-01570-NRN

MARISELA MERINO, individually and on behalf of all similarly situated persons,

    Plaintiff

v.

RCG RIFLE, LLC, MICHAEL SPRADLIN and SARA MARTZ,

    Defendants

---

**JOINT MOTION FOR FINAL APPROVAL OF CLASS**
**ACTION SETTLEMENT**

---

    Plaintiffs Marisela Merino and Susan Ho and Defendants RCG Rifle, LLC, Michael Spradlin and Sara Martz (collectively the "Parties"), by and through their undersigned counsel of record, hereby request final approval of the Parties' Settlement Agreement[1]. In support, the Parties respectfully state as follows:

**I.**    **INTRODUCTION**

    Defendants operate a chain of three "Rib City" restaurants in Grand Junction, Rifle and Fruita, Colorado. Plaintiffs, former employees of Defendants, filed this class action against Defendants on June 1, 2020 in this Court. Plaintiffs alleged that Defendants improperly diverted customer tips from their service staff to its kitchen staff. Plaintiffs also alleged that Defendants failed to provide their employees all

---

[1] A copy of the Settlement Agreement was attached as Exhibit 1 to the parties' *Joint Motion for Preliminary Approval of Settlement Agreement Certifying Class for Purpose of Settlement, Directing Notice to the Class, and Scheduling Final Approval Hearing* (ECF No. 44-1).

required breaks.  The Parties have had significant bona fide disagreements about legal and factual issues at the core of this dispute, but each party nonetheless acknowledges the risk of an adverse outcome after trial and thus agree to the attached settlement.

Subject to final Court approval, the Parties have agreed to settle this action on a class basis for a maximum, all-inclusive payment of $255,000, inclusive of attorneys' fees and litigation costs, payroll taxes, service awards, and administration costs.  The settlement is the result of extensive negotiations between the parties during a year of litigation, including motion practice, written discovery, and the exchange of extensive payroll information.

The Parties respectfully submit that the proposed settlement is fair, reasonable and adequate, and therefore ask the Court to enter an order: (1) approving the FED. R. CIV. PROC. 23 class action settlement, adjudging its terms to be fair, reasonable, and adequate; (2)) approving Class Counsel's attorney's fees and litigation costs; and (3) approving service awards to the Class Representatives.

Under the Parties' proposed Settlement, each Rule 23 Class Member will receive a share of the $255,000 settlement fund (such total amount including attorney's fees and costs, the incentive payment, and the payment to the class administrator).  For distribution purposes, the settlement fund will be distributed based on the amount of tips diverted to kitchen staff by Defendants.

The Settlement is fair and reasonable and should be approved by this Court because: (1) the release narrowly covers only the specific claims at issue and is not a general release or even a release of all wage and hour claims, *Settlement Agreement*

at ¶ IV.D.2; (2) the Rule 23 Class Members had the opportunity to object to or opt out of the settlement; and (3) the settlement is non-reversionary, i.e., Defendant will pay the entire amount of $255,000.

## II.    BACKGROUND

### A.    Procedural and Litigation History

Plaintiffs worked as servers for Defendants.  On June 1, 2020, they filed the instant action alleging that Defendants improperly diverted employee tips in violation of the Fair Labor Standards Act ("FLSA") and Colorado state law.  Plaintiffs also alleged that Defendants failed to provide all of the breaks required by Colorado state law.  The Parties thoroughly investigated their claims and defenses, engaged in written discovery and reviewed extensive payroll information.

### B.    Background of Settlement Negotiations

The Parties conducted an extensive investigation of facts during the course of litigation, which included the formal and informal exchange of information.  Counsel for the Parties also analyzed the likelihood of class certification in the event the Parties did not reach a settlement, as well as facts associated with Plaintiffs' claims.  The Parties further reviewed the record and interviewed witnesses.  Numerous tele-conferences were held and emails exchanged between counsel for the Parties in order to attempt to resolve the claims.

Defendants continue to deny any liability or wrongdoing of any kind associated with the claims alleged by Plaintiffs, and further deny that, for any purpose other than settling this matter, this action is appropriate for class treatment.  Defendants contend that it is impossible to establish the commonality and typicality required by Rule 23.

Defendants further contend that Plaintiffs cannot demonstrate that common issues of law or fact will predominate over individualized inquiries or that a class action is the superior method of resolving the claims of Plaintiffs and the putative class members. Defendants contend that individualized inquiries would outweigh any commonality of factual or legal issues and also claim that Plaintiffs could not establish, on a class-wide basis, that all employees were entitled to additional backpay.

Plaintiffs, on the other hand, assert that Defendants failed to comply with federal and Colorado law. Class Counsel understands Defendants' position and defenses, but believes Plaintiffs, individually and on behalf of the class, could ultimately succeed at trial on the basis of common proof. Both Parties recognize the uncertainty of the outcome, and appreciate the expense and time associated with further litigation.

Accordingly, in the interest of resolution, representatives of the Parties participated in lengthy settlement negotiations and ultimately reached the Settlement Agreement after taking into account the disputed factual and legal issues, the risks attendant to further prosecution, Defendants' defenses, and the benefits to be received by class members. Counsel concluded that settlement on the terms set forth herein is in the best interest of Plaintiffs and the class and is fair and reasonable.

## III.    **THE PARTIES' SETTLEMENT**

### A.    The Settlement Terms

The Settlement Agreement defines the "Settlement Class" and "Settlement Class Member(s)" as:

> ALL TIP CREDIT SERVERS WORKING AT DEFENDANTS' GRAND JUNCTION, FRUITA AND RIFLE LOCATIONS AT ANY TIME BETWEEN APRIL 1, 2018 AND APRIL 1, 2020 WHO PARTICIPATED IN DEFENDANTS' FORMER TIP POOL THAT INCLUDED KITCHEN

STAFF.

Ex. 1 at ¶ II.A.  The Class Members are identified in the Settlement Agreement.

The Settlement provides for a $255,000 settlement amount (the "Gross Settlement Amount"), which is the maximum amount Defendants are required to pay under the Settlement Agreement.  Ex. 1 at ¶ IV.E.1.  The Settlement is non-reversionary.  All required payments will be made from this amount, including all payments to Settlement Class Members, attorney's fees and litigation expenses, all payroll and withholding taxes, including all employer payroll taxes, settlement administration costs, and any enhancement award.  Id.

Plaintiff's counsel has agreed to seek no more than $91,800 (or 36% of the total settlement amount) for attorney's fees, which amount includes all litigation costs.  Ex. 1 at ¶ IV.E.2.  The Settlement Agreement provides for Plaintiffs to receive enhancement payments of $7,619.35 for Ms. Merino and $4,119.16 for Ms. Ho.  Ex. 1 at ¶ IV.E.3.  To the extent the Court approves lesser amounts for attorney's fees or litigation costs, the unapproved amounts will be allocated to Settlement Class Members on a pro rata basis.  Ex. 1 at ¶ IV.E.6.

**B.    The Settlement Payments**

The Gross Settlement Amount, less all amounts required to be paid under paragraphs IV.E.2.–.E.5., will be allocated among the Settlement Class Members that do not opt-out based on the amount of tips diverted from each Class Member to kitchen staff.  Each Settlement Class Member's anticipated payment prior to applicable taxes is set forth in the Settlement Agreement.  The settlement payments will be allocated 50 percent to wages and 50 percent to penalties/interest.  Ex. 1 at ¶

IV.E.7.d.   Settlement checks that cannot be delivered or are not cashed after 180 days of mailing will be redistributed among those Class Members who previously deposited or cashed their settlement checks.   Ex. 1 at ¶ IV.G.3.

## IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT

On August 2, 2021, the Court granted preliminary approval to the Parties' Rule 23 Class Action Settlement. (ECF No. 47). The Court also conditionally certified the case under Rule 23 for settlement purposes. *Id.*

The Settlement Notice and Opt-Out Form was mailed to 83 Rule 23 Class Members. *See Declarat*ion of Matthew G. Clark, attached hereto as Exhibit 1.  There were 16 mailings that were returned for which skip tracing was performed. Notices were then re-mailed to 11 individuals for whom updated information could be found. *Id.*  In total, 79 of the 85 class members (92.9%) received the notice.  Of the 6 class members who did not receive notifications, 4 did not identify an address when the skip tracing was performed and two had a second mailing but those were returned as well.

The time period to opt-out or object is now closed and no Class Members opted-out of the settlement. *Id.* There were no objections.  *Id.* On August 2, 2021, the Court set Final Approval Hearing to occur on October 15, 2021.  (ECF No.  47). After the Final Approval Hearing and expiration of applicable appellate deadlines, Defendants' obligation to fund the Settlement and pay the Settlement will be triggered.

**V.    THE RULE 23 CLASS SETTLEMENT SATISFIES THE CRITERIA FOR FINAL APPROVAL**

**A.    Introduction**

Approval of a proposed class action settlement is within the sound discretion of the Court. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002*); Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). Settlements are generally favored, so a court should approve a settlement if it is fair and reasonable. *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 283-284 (D. Colo. 1997)(applying factors considered in class action settlements to settlement of EEOC action). The primary question raised is whether the proposed settlement is "within the range of possible approval." *See, e.g., In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007); *see also Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

Here, the Court preliminarily approved the settlement as fair and reasonable on August 2, 2021. (ECF No. 47). After preliminary approval, the claims administrator disseminated a detailed notice informing the Class Members of their right to opt out of, or object to, the settlement. No Class Member opted-out and there were no objections.

Again, the authority to approve a settlement of a class action suit is committed to the sound discretion of the trial court, and settlement approval will not be set aside absent an abuse of discretion. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir.1984). Courts apply the following factors to determine whether a proposed Rule 23 class action settlement is fair, reasonable and adequate:

(1)    Whether the proposed settlement was fairly and honestly negotiated;

(2)    Whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt;

(3)    Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4)    Whether the parties' judgment is that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

The Parties' Rule 23 Class Settlement satisfies all four factors and meets all of the requirements of Rule 23.

**B    The Proposed Settlement Was Fairly and Honestly Negotiated.**

Where a settlement results from arm's-length negotiations between experienced counsel, "the Court may presume the settlement to be fair, adequate, and reasonable." *Lucas*, 234 F.R.D. at 693 citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2nd Cir. 2005).  As discussed above, the proposed Rule 23 Class Settlement is the product of extensive arm's-length, informed, non-collusive negotiations.  It was the result of vigorous advocacy by the Parties. *See Lucas*, 234 F.R.D. at 693 citing *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997). Here, the Parties are represented by experienced counsel specializing in the type of wage and hour claims alleged in the action. The Parties engaged in formal discovery regarding the merits of the claims and Defendants' defenses, including written discovery and the informal exchange of voluminous pay records for both the Plaintiffs and the putative Settlement Class Members.

Through this formal and informal discovery, each party possessed ample

information to fully evaluate the strengths and weaknesses of their claims and defenses, as well as the fairness of the Settlement Agreement.  The Parties' counsel rigorously negotiated the settlement terms, such that there can be no doubt that the settlement was honestly and fairly negotiated, and not the product of collusion.  See *Lucas*, 234 F.R.D. at 693 (settlement presumed to be fair and reasonable where it is the result of "arm's length negotiations between experienced counsel after significant discovery").

### C.    Serious Disputed Questions of Law and Fact Remain.

To continue through trial would expose the parties to significant risks.  See *Wilkerson*, 171 F.R.D. at 285-86 ("Indeed, the one constant about litigation, based on my experiences as a trial attorney and now as a judge, is that the ultimate jury result is uncertain, unknown and unpredictable.")  Plaintiffs believe the claims are strong but recognize that success is not guaranteed.  With respect to the merits of Plaintiffs' claims, Plaintiffs believe they will prevail in demonstrating that Defendants' servers are owed additional compensation under the FLSA and Colorado law.  Defendants, however, contend that they properly distributed tips and provided breaks.  Moreover, Defendants are confident that Plaintiffs would ultimately not prevail in certifying the class.   Nonetheless, while both Parties believe their positions are strong, both recognize that they may not ultimately prevail, and that the proposed settlement alleviates the uncertainty for both sides.

Even aside from the risks associated with determining liability, significant risks exist as to the amount of possible damages.  For example, the Parties dispute whether the three-year limitations period applies, or whether the two-year period for

non-willful violations would be applicable in this matter.  *See Tuten*, 41 F. Supp. 3d at 1007 (approving final settlement where questions of law and fact existed with respect to applicable statute of limitations).  Moreover, the availability of state law penalties and/or liquidated damages is a disputed issue.  Because there are several important questions of law and fact regarding liability and damages that remain unresolved, the second factor weighs in favor of approval of the Settlement. Moreover, as described above, the Parties have met their obligation to prove that a bona fide dispute exists between adversarial parties.  *Pliego*, 313 F.R.D. at 127-28 (citing *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) ("In the context of settlement of an FLSA [action], a district court must 'scrutiniz[e] the settlement for fairness' and decide whether the proposed settlement is a 'fair and reasonable resolution (sic) of a bona fide dispute over FLSA provisions.").

### D. The Value of an Immediate Recovery Outweighs the Possibility of Future Relief After Protracted and Expensive Litigation.

Courts also "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Col. 1976); *see also Jones*, 741 F.2d at 324 (courts should consider "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation"); *Rutter*, 314 F.3d at 1188; *see also Crocs*, 2013 WL 4547404. at *12 ("Given the uncertainty of plaintiffs' likelihood of success on the merits and the prospects of prolonged litigation, the Court finds that immediate recovery outweighs the time and costs inherent in complex. . . litigation, especially when the prospect is sonic recovery versus no recovery.") The interest in

avoiding, continuing complex litigation justifies accepting the Rule 23 Settlement. *Wilkerson*, 171 F.R.D. at 288.

Although Class Counsel believe that the Class claims are meritorious, Counsel recognizes the significant risks and expense necessary to further prosecute the claims against Defendant through motion practice, trial, and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails. In considering whether to enter into the Settlement, the Plaintiffs weighed the value of an immediate recovery against the prospect that significant proceedings remained ahead, including additional discovery, class certification briefing, including the risk of decertification, summary judgment briefing, *Daubert* motions, trial preparation and, of course, a trial.

Class Counsel also considered the risks inherent in litigating a complex wage and hour class action through summary judgment and trial, and the particular risks at issue in this case. Considering all of these factors, the value of an immediate recovery outweighs the possibility of any additional future relief. This weighs in favor of preliminary approval. *See, e.g., Nieberding v. Barrette Outdoor Living, Inc.*, No. 12-CV-2353-DDC-T,11, 2015 WL 1645798, at *3-5 (D.Kan. Apr. 14, 2015); *see also Seiffer v. Topsy's Intl, Inc.*, 70 F.R.D. 622, 625, 629 (D.Kan. 1976)(approving partial settlement and noting that although plaintiffs had "no serious doubts" about establishing liability, the "risk of ultimately recovering money damages dogs the heels of even able and zealous counsel," especially in large and complex cases, and the "certainty of fixed recovery by way of agreement is often preferable to the vagaries of what might be achieved by a trial.")

E.     **The Parties and Their Counsel Have Judged the Settlement as Fair and Reasonable.**

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695 quoting *Marcus v. Kansas Dep't. of Revenue*, 209 F. Supp. 2d 1179, 1183 (D Kan. 2002); *Wilkerson*, 171 F.R.D. at 288-89. Class Counsel and Defendants' Counsel have extensive experience with class action litigation and wage and hour litigation, in particular. They have determined that the proposed settlement is fair and reasonable.

The proposed Settlement represents a very meaningful recovery of the damages suffered by the Class and is well within the range of what is considered fair, reasonable, and adequate. In light of the risks Plaintiffs face in advancing this matter to trial, the proposed Settlement is a very favorable result. *See also Bower v. Cycle Gear, Inc*, 2016 WL 4439875, at *7 (N.D.Cal. Aug. 23, 2016)(reasoning that "the results obtained for the Class Members were very favorable" where the average recovery was $183.70); *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 982 (E.D.Cal. 2012)(reasoning that average recovery of over $2,000 per Plaintiff was a "favorable" result).

Courts are also to consider "the judgment of the parties that the settlement is fair and reasonable." *Jones*, 741 F.2d at 324; *Rutter*, 314 F.3d at 1188. Counsel for the Parties believe that the Settlement is more than fair and reasonable. "Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695 quoting *Marcus v. Kansas Dep't. of Revenue*, 209 F. Supp. 2d 1179. 1183 (D.Kan. 2002). Here, Class Counsel is among the most experienced and respected wage and hour lawyers in Colorado, if not the nation, and has

tirelessly advanced the Class claims since the case's inception. In Class Counsel's opinion, the Settlement is more than fair and reasonable, it represents an outstanding result for the Class in light of the risks Plaintiffs faced in going forward. The Court will ordinarily grant final approval where the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 675 (D.Kan. 2009)(citation omitted).

In light of the substantial recovery to the Class, the arm's-length nature of the negotiations and the participation of sophisticated counsel throughout the litigation, a finding that the proposed Settlement is sufficiently fair, reasonable and adequate to justify final approval is more than justified. The Settlement Agreement satisfies each of the Tenth Circuit's stated criterial for approval, and the Court should grant final approval.

> **F.    The Settlement Class Meets the Requirements of Rule 23(a) For Settlement Purposes.**
>
> > **1.    Numerosity**

The numerosity requirement of Rule 23(a)(1) is established if the class is so numerous that joinder of all members is impracticable.  In the instant case, the Settlement Class consists of 83 individuals, which satisfies the numerosity requirement of Rule 23(a)(1). *See, e.g. Maez v. Springs Automotive Group, LLC*, 268 F.R.D. 391, 395 (D.Colo. 2010)(391 putative class members satisfied numerosity requirement).

### 2.    Commonality

"A finding of commonality requires only a single question of law or fact common to the entire class." *DG v. Devaughn*, 594 F.3d 1188, 1194-1195 (10th Cir. 2010). "[E]very member of the class need not be in a situation identical to that of the named plaintiff." *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982). Here, Plaintiff contends the primary questions of law and fact central to the claims against Defendant include:

a.    Whether tips were improperly diverted to Defendants' kitchen staff;

b.    Whether Defendants provided required breaks to employees;

c.    Whether Defendants willfully violated the Colorado Wage Claim Act; and

d.    Whether Plaintiffs and the Class Members have sustained damages and, if so, the proper measure of damages.

Thus, for settlement purposes, the proposed class members share sufficient commonality to satisfy FED. R. CIV. P. 23(a)(2).

### 3.    Typicality

To satisfy the typicality requirement FED. R. CIV. P. 23(a)(3), Plaintiff must show that his claims "are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiff such that the interests of the class will be fairly and adequately protected in their absence. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*,

855 F.2d 668, 676 (10th Cir.1988).

Plaintiffs allege that they and the other putative class members were paid improperly since their tips were diverted to kitchen staff and they were not provided required breaks.  As a result, Plaintiffs claim that they and the other putative class members are owed additional compensation.   Plaintiffs contend that the legal standards and requirements for proving the subject wage and hour claims under Colorado law are the same for Plaintiffs' individual claims and those of all of the putative class members.    Thus, for settlement purposes, Plaintiffs' claims are sufficiently typical of the putative class to satisfy Fed. R. Civ. P. 23(a)(3).

### 4.    Adequacy

The last requirement of Rule 23(a) is that the representative party will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a)(4). The Tenth Circuit has identified two questions relevant to the adequacy of representation inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002). "Adequate representation depends on, among other factors, an absence of antagonism between the representatives and absentees, and a sharing of interest between representatives and absentees." *In re Molycorp, Inc. Securities Litigation*, 2017 WL 4333997, at *6–7 (D.Colo., 2017)(citations omitted).

Plaintiffs assert that neither they nor their counsel have any interests antagonistic to those of the putative class members. Plaintiffs contend they have

communicated regularly with Class Counsel, and that Plaintiffs, through their counsel, have prosecuted this action vigorously on behalf of themselves and the putative class. Plaintiffs contend their counsel has considerable experience as lead counsel in class action wage and hour litigation. Thus, for settlement purposes, Plaintiffs have established that they and Class Counsel fairly and adequately protected the interests of the putative class to satisfy FED. R. CIV. P. 23(a)(4).

### G.   The Settlement Class Meets the Requirements of Rule 23(b)(3) for Settlement Purposes.

Plaintiffs assert that certification is proper under Rule 23(b)(3) for settlement purposes. Rule 23(b)(3) permits class certification when (1) common questions of law and fact predominate over any individual claims and (2) a class action is the superior method to fairly and efficiently adjudicate the matter. Under the Rule 23(b)(3) predominance analysis, the Court must determine whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *See Amchem Products, Inc. v. Windso*r, 521 U.S. 591, 623 (1997).

### 1.   Predominance

The predominance requirement is satisfied if a plaintiff establishes that a common nucleus of facts and potential legal remedies dominates the litigation. *Id.* As explained above, Plaintiffs assert that the common nucleus of facts in the present case derives from the alleged practices that (1) improperly diverted tips to kitchen staff; and (2) did not provide required breaks to Class Members. Based on these alleged violations of law, Plaintiffs allege that the Settlement Class Members would be entitled to the same legal remedies. Accordingly, preliminary class certification for settlement purposes to effectuate the Settlement Agreement is proper. Additionally,

Plaintiffs contend that class certification in this case serves the judicial economy function of Rule 23 class actions.

### 2.    Superiority

Plaintiffs allege that a proposed class action settlement is the superior method of resolving the dispute in comparison to available alternatives. A class action is the superior method for managing litigation if no realistic alternative exists. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-1235 (9th Cir. 1996). Plaintiffs assert that the alternative method of resolution is dozens of individual claims, but individual cases would be uneconomical for potential plaintiffs because the cost of litigation dwarfs their potential recovery, and for Defendants and the Court because it would cause an extensive duplication of efforts and resources. Because it is likely that each individual Settlement Class Member could only pursue relatively small claims, such individuals have no particular interest in individually controlling the prosecution of separate actions. Additionally, in the instant action, the Settlement Class Members have the option to opt-out of the proposed settlement, thus allowing individuals the opportunity to control the litigation.

There is no other pending litigation involving the Settlement Class Members, and Plaintiffs assert that concentrating the litigation of the claims in a particular forum would be the most efficient manner or adjudicating all of the claims of the Settlement Class. For purposes of preliminary approval of the Settlement Agreement, there is no reason why concentrating the litigation in this Court would be undesirable.

Lastly, under Rule 23(b)(3)(D), the Court may consider likely difficulties in managing a class action. In the context of a settlement, however, considerations

regarding management of the class action are irrelevant, because the proposal to the court is to avoid trial through a settlement agreement. *See Amchem,* 521 U.S. at 620 (1997). In light of these considerations, preliminary certification of the Settlement Class for settlement purposes is proper under the requirements of Rule 23(b)(3).

## VI.    ATTORNEY'S FEES AND COSTS

In class action cases, counsel who obtain a common fund settlement are entitled to recover reasonable attorneys' fees paid from the fund. *See Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994). Courts generally award attorneys' fees in common fund cases "based on a percentage of the common fund obtained for the benefit the class," thereby "proportionately spreading payment of attorney fees among the class members." *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc*., 09–cv–01543–REB–KMT, 2010 WL 5387559, at *2-3 (D. Colo. Dec. 22, 2010). "The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel was retained on a contingent fee basis, as in this case." *Id.* (quotations omitted); *see also Anderson v. Merit Energy Co.*, Nos. 07–cv–00916–LTB–BNB, 07–cv–01025–REB–MJW, 2009 WL 3378526, at *2 (D. Colo. Oct. 20, 2009) ("Under Tenth Circuit law, attorneys' fees in common fund cases are generally awarded based on a reasonable percentage of the fund created."). Here, Class Counsel seeks a fee paid out of the common fund created for the benefit of the class. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980).

As a "cross-check" of the reasonableness of a fee award calculated as a percentage of the fund, the Tenth Circuit has adopted a test, which analyzes the

following twelve factors (the "*Johnson*" factors): (i) the time and labor required; (ii) the novelty and difficulty of the question presented in the case; (iii) the skill requisite to perform the legal service properly; (iv) the preclusion of other employment because of acceptance of the case; (v) the customary fee; (vi) whether the fee is fixed or contingent; (vii) any time limitations the client or circumstances imposed; (viii) the amount involved and the results obtained; (ix) the attorneys' experience, reputation, and ability; (x) the undesirability of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714-717-19 (5th Cir. 1974); *Gottlieb*, 43 F.3d at 483 & n. 4. "[R]arely are all of the Johnson factors applicable." *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993). Here, Class Counsel seeks attorneys' fees of $91,800, inclusive of litigation costs, which is 36% of the settlement fund.

"Courts have consistently held that the most important factor within this analysis is what results were obtained for the class." *Lane v. Page,* 862 F. Supp. 2d 1182, 1254 (D.N.M. 2012). Here, under Defendants' theory, none of the class members would be owed anything. Instead, Class Counsel has secured a class settlement that provides for a reasonable estimate of damages for all class members given the facts of the case and the relative merits of Plaintiffs' claims and Defendants' possible defenses.

Moreover, applying the *Johnson* factors demonstrates that the fees and expenses sought by Class Counsel are reasonable. First, the time and labor involved support the fees. Class Counsel prosecuted the litigation without payment

and advanced all costs. Class Counsel also engaged in significant discovery and motions practice.[2] Second, the novelty and difficulty of the questions presented support the fees sought by Class Counsel. This case involved complex employment law issues as well as complicated issues relating to class certification. In fact, Class Counsel believes that very few, if any, Colorado practitioners would even have recognized the fundamental legal issues, let alone been willing to litigate the issue on a contingency basis.

Because factors three and nine are closely related, the Court analyzes together the skill requisite to perform the legal services properly, and the experience and skill of Class Counsel. Here, Class Counsel has significant experience prosecuting complex wage and hour class actions and collective actions. (Gonzales Decl. ¶¶1-11). Class Counsel represents workers across the country in wage and hour matters and has successfully prosecuted class and collective actions numerous times. *Id.* Accordingly, Class Counsel's skill and reputation weigh in favor of the requested attorneys' fee and expense award.

Further, the attorneys' fees in this case were contingent. This factor weighs in favor of the requested attorneys' fee award, because "[s]uch a large investment of

---

[2] Through completion of this settlement, Class Counsel will have invested approximately 75 hours into this litigation. *Declaration of Brian D. Gonzales at* ¶12 (ECF No. 44-3). Given his experience and specialization in this complex area of practice, Class Counsel believes $600/hour to be a reasonable rate. *Id.* at ¶ 13; *Magouirk v. Spanish Trails, Inc.,* No. 18-cv-01669-PAB-KLM, 2020 WL 2512831, at *2 (D. Colo. May 15, 2020) (citing *Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *8 (D. Colo. Apr. 22, 2015)) (recognizing reasonable hourly rates between $150 and $675 for attorneys and staff members involved in litigation). Given Class Counsel's lodestar of $45,000, the $91,800 contingent, common-fund percentage fee award is well within the range of reasonableness, particularly since it includes costs. *Magouirk*, 2020 WL 2512831, at *2 (citing *Mishkin v. Zynex, Inc.,* No. 09-cv-00780-REB-KLM, 2012 WL 4069295, at *2 (D. Colo. Sept. 14, 2012)) (recognizing that lodestar multipliers between 2.5 and 4.6 are reasonable).

money [and time] place[s] incredible burdens upon ... law practices and should be appropriately considered." *Feerer v. Amoco Prod. Co.*, 1998 U.S. Dist. LEXIS 22248, at *33; *see also Been v. O.K. Indus., Inc.*, No. CIV–02–285–RAW, 2011 WL 4478766, at *9 (E.D. Okla. Aug. 16, 2011) ("Courts agree that a larger fee is appropriate in contingent matters where payment depends on the attorney's success."). Class Counsel assumed the risk that the litigation would yield no recovery and received no compensation for the time and expenses incurred during the course of the litigation.

The requested fee award of 36% (including costs) is appropriate in complex cases taken on a contingent fee basis. *See, e.g., Cook v. Rockwell Int'l Corp.*, No. No. 90–CV–00181–JLK, 2017 WL 5076498 (D. Colo. Apr. 28, 2017) (awarding 40% fee to class counsel); *Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-01884-KMT-MEH, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) ("Together the fees and costs amount to approximately 39% of the fund as a whole. This is within the normal range for a contingent fee award."); *Legros v. Mud Control Equip., Co.*, No. 15-1082, 2017 WL 925730, at *3 (W.D. La. Mar. 6, 2017); *Hebert v. Baker Hughes, Inc.*, No. 6:15-2566, 2016 WL 7029336, at *4 (W.D. La. Nov. 9, 2016).

Additionally, the time and effort to litigate this case as well as the complexity of the issues would make it undesirable to many attorneys. *See Been*, 2011 WL 4478766, at *10 (finding that the time and effort expended in an expensive litigation made a class action undesirable for class counsel). Under Defendants' theory, Plaintiffs and Class Members are not owed any additional wages. Furthermore, the legal theories involved required substantial expertise in the wage and hour field.

Many attorneys would not have understood the nuanced arguments asserted, nor would they have been able to discern whether Plaintiffs even had a viable claim. Additionally, other lawyers may not have had the expertise to ascertain and evaluate the possible damages awards available to the Class Members in this case. Thus, the work of Class Counsel provided a significant benefit to the Class Members. Had this case not settled, Class Counsel would have vigorously litigated the case without any promise of success and compensation. Yet, at every step of the litigation, Defendants could have succeeded. Applying the relevant Johnson factors, Class Counsel asks that the Court approve the requested award of attorneys' fees.

## VII.   SERVICE AWARD

In addition, the Parties have moved the Court to approve a service award to each of the Class Representatives. Service awards are typical in class action cases. *See* 4 William B. Rubenstein et al., *Newberg on Class Actions* § 11:38 (4th ed. 2008). Courts have stated that service awards for class representatives are justified to give incentive to a class representative to come forward when none are forthcoming, and to compensate a class representative for risks they take and work they perform on behalf of the class. *See UFCW Local 880–Retail Food Employers Joint Pension Fund v. Newmont Mining Corp.,* 352 Fed. Appx. 232, 235-36 (10th Cir. 2009). "[A] class representative may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class." *UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp.*, 352 Fed. Appx. 232, 235 (10th Cir. Sept. 11, 2009); *see also Lucken Family Ltd. Partnership v. Ultra Resources, Inc.*, 2010 WL 5387559, at *6 (D.Colo. Dec. 22, 2010)("Courts have held

that incentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf.")

When evaluating the reasonableness of a service award, courts may consider factors such as "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation. . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Ultimately, the amount of the service award is up to the Court's discretion. However, in a wage and hour class action like this, the requested awards of $7,619.35 for Ms. Merino and $4,119.16 for Ms. Ho are reasonable because of "the fear and risk of retaliation and embarrassment in the workplace, on top of the time and administrative commitment that is commonly shared in all cases." *Scovil v. FedEx Ground Package Sys., Inc.*, No. 1:10-CV-515-DBH, 2014 WL 1057079, at *6–7 (D.Me. Mar. 14, 2014) citing Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L.Rev. 1303, 1308 (2006)(considering 374 cases from 1993–2002 and finding that then—**between 26 and 17 years ago**—the median incentive payment was $4,357 and the mean incentive payment was $15,992).

The service award here is appropriate because the Class Representatives took a substantial risk in coming forward with reports of Defendants' alleged wage and hour violations when no other employees were willing to do so. The Class Representatives faced the risk of being retaliated against or having a reputation of

being litigious, which may have caused other employers to refuse to hire them. *See, e.g., Cazorla v. Koch Foods of Mississippi, L.L.C.,* 838 F.3d 540, 561 (5th Cir. 2016)("[E]mployers commonly and unlawfully retaliate against irksome workers . . . ."); *see also Rivera v. NIBCO, Inc.,* 364 F.3d 1057, 1064-65 (9th Cir. 2004). In addition, the Class Representatives assisted counsel with developing the legal theories for the case. Moreover, by the time they receive payment on his claim, over one and one-half years will have passed since they commenced this lawsuit. Plaintiffs accepted this delay despite the likelihood that, if they had elected not to pursue claims on behalf of the class, they likely could have settled their individual claims at the outset. As a result, the modest service awards sought here are reasonable. *Blanco v. Xtreme Drilling and Coil Services, Inc.*, No. 16-cv-00249-PAB-SKC, 2020 WL 4041456, *7 (D. Colo. July 17, 2020)(approving $24,000 service award in part due to risk of industry "blackballing"); *Valverde v. Xclusive Staffing, Inc.*, No. 16-cv-00671-RM-NRN, 2020 WL 4057585, *3 (D. Colo. July 20, 2020)(approving $20,000 service award)

## VIII.  <u>CONCLUSION</u>

For the reasons set forth herein, the Parties jointly move for an order: (1) granting final approval to the Rule 23 Class Action Settlement; (2) approving the attorneys' fees and litigation costs to Class Counsel; and (3) approving the service awards to the Class Representatives.

For the Court's convenience, a proposed order is attached hereto as Exhibit 2.

Respectfully submitted this 8ᵗʰ day of October 2021.

| | |
|---|---|
| */s/Brian D. Gonzales* | */s/Jon Olafson* |
| Brian David Gonzales, Esq. | Jon Olafson |
| **THE LAW OFFICES OF** | **LEWIS BRISBOIS BISGAARD** |
| **BRIAN D. GONZALES** | **& SMITH, LLP** |
| 2580 East Harmony Road, Suite 201 | 1700 Lincoln Street, Suite 4000 |
| Fort Collins, CO 80528 | Denver, CO 80203 |
| Telephone: (970) 214-0562 | Telephone: (303) 562-9767 |
| BGonzales@ColoradoWageLaw.com | Jon.Olafson@lewisbrisbois.com |
| | |
| **ATTORNEYS FOR PLAINTIFFS** | **ATTORNEYS FOR DEFENDANTS** |